# IN THE COURT OF APPEALS OF IOWA

No. 21-0821
Filed July 13, 2023


**FIRST IOWA STATE BANK f/k/a COMMUNITY FIRST BANK,**
    Plaintiff-Appellee/Cross-Appellant,

**vs.**

**GAIL B. KLODT,**
    Defendant-Appellant/Cross-Appellee,

**and**

**BRADLEY J. KLODT and UNITED STATES OF AMERICA through U.S. DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY,**
    Defendants.

---

**FIRST IOWA STATE BANK f/k/a COMMUNITY FIRST STATE BANK,**
    Third-Party and Counterclaimant Plaintiff,

**vs.**

**JOEL M. SHUMATE,**
    Third-Party Defendant,

**and**

**BRADLEY J. KLODT and GAIL B. KLODT, husband and wife,**
    Defendants to Counterclaim.
_____


        Appeal from the Iowa District Court for Van Buren County, Shawn Showers,

Judge.


        A borrower appeals the district court's grant of summary judgment in favor

of her bank, while the bank cross-appeals against a third-party defendant.

**AFFIRMED ON APPEAL; APPEAL DISMISSED ON CROSS-APPEAL.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Kristina M. Stanger and Logan J. Eliasen of Nyemaster Goode, P.C., Des Moines, for appellee.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

First Iowa State Bank, formerly known as Community First Bank, (the Bank) filed a lawsuit seeking a personal judgement against Bradley (Brad) and Gail Klodt, husband and wife, over the failure to timely pay several promissory notes. As they were in the midst of divorce proceedings, Brad and Gail answered separately, and each alleged several counterclaims. Ultimately, the district court granted the Bank's motion for summary judgment, dismissing the counterclaims with prejudice and finding the Bank entitled to judgment on its foreclosure action. Gail filed this appeal, arguing the court erred in dismissing her counterclaims.[1] The Bank filed a cross-appeal against third-party defendant and former Bank employee, Joel Shumate. Because we affirm the order of the district court with regard to Gail's counterclaims, we need not reach the Bank's cross-appeal and order it dismissed.

**I.    *Background Facts and Proceedings.***

On February 14, 2005, and July 28, 2014, Brad and Gail jointly executed promissory notes with the Bank for $165,000 and $535,000, respectively. Brad individually executed fifteen additional promissory notes with the Bank over the course of several years. As security for their debts with the Bank, Brad and Gail executed four separate mortgages—in 1999, 2002, 2005, and 2013. The 2005 and 2013 mortgages each specified a note by number, while the 1999 and 2002 mortgages indicated generally that they secured "notes with [the Bank]". All four of the mortgages included the following clause: "If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all

---

[1] Brad did not file an appeal.

future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others."[2] Brad and Gail also executed three agricultural security agreements with the Bank—two in 1998 and another in 2002. These agreements encumbered inventory, equipment, and farm products, including cattle, and broadly secured the payment and performance of debts owed to the Bank then or at any time thereafter.

The Klodts primarily worked with Bank employee Joel Shumate regarding their loans. Of the fifteen loans secured individually by Brad, at least two of them involved conflicted transactions with Shumate. After executing loan documents in November 2016 and October 2017, Brad issued checks for similar amounts to Shumate and Shumate's father. This conduct formed the basis for the Federal Reserve System Board of Governors to issue an order of prohibition against Shumate on October 18, 2018, which effectively banned Shumate from working in the banking industry. Shumate consented to the order.

Gail filed for divorce at some time after she learned that Brad took out loans individually. She alleges that Brad intentionally withheld financial records in order to conceal the loans from her. Although Gail handled payroll, she maintains that Brad controlled the finances of their farming operation. She further claims that the Bank intentionally withheld the loans Brad individually took out from the couple's online banking portal. When asked during her deposition whether she noticed deposits from the Bank in their online account, Gail replied:

---

[2] The 2013 mortgage conveyed the same idea but contained slightly different language, including the following: "If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument."

No, I didn't. If I'm guilty of anything, I just didn't look. I always took it for granted that it was coming from the feeding operation, because that can make a lot of money. And my name's on that too, on the hoop barns. That loan. I signed on it.

The Bank filed its petition to foreclose on the Klodts's loan documents in November 2018. Gail filed five counterclaims, alleging: (1) fraud and misrepresentation, (2) fraudulent nondisclosure, (3) breach of contract, (4) discrimination under the Equal Credit Opportunity Act, and (5) punitive damages. Following these and additional counterclaims asserted by Brad, the Bank asserted four additional counts in a third-party petition against Shumate: (1) fraud, (2) civil conspiracy, (3) unjust enrichment, and (4) indemnity and contribution.

In November 2020, the court granted the Bank's first motion for summary judgment in part, dismissing Gail's fourth counterclaim for discrimination, as well as two of Brad's counterclaims. After additional discovery, the Bank filed a second motion for summary judgment in April 2021. On May 14, the district court granted this motion in full. The court dismissed all of Brad and Gail's remaining counterclaims with prejudice and found the Bank entitled to judgment on its foreclosure action. The court summarily denied Gail's motion for reconsideration.

In June, Shumate filed a motion for judgment on the pleadings with regard to the Bank's third-party claims against him, alleging these claims became moot in light of the summary judgment entered against Brad and Gail. The Bank did not contest Shumate's motion, and the court ordered the cross-petition be dismissed.

Gail filed a timely notice of appeal, following which the Bank filed notice of cross-appeal in the third-party action against Shumate. Essentially, the Bank

requested that if we should reverse the court's summary judgment order against Gail on appeal, then we should reinstate the cross-petition against Shumate.

## II.    Review.

We review the district court's ruling on the defendants' motion for summary judgment for correction of errors at law. *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 336 (Iowa 2020). In reviewing a ruling on summary judgment, we view the facts in the light most favorable to the nonmoving party. *Id.* at 337.

> The burden is on the moving party to demonstrate the nonexistence of a material fact question. However, the nonmoving party may not rely on mere allegations in the pleadings but must set forth specific facts showing a genuine issue for trial. If the nonmoving party cannot generate a prima facie case in the summary judgment record, the moving party is entitled to judgment as a matter of law.

*Id.* at 336–37 (internal citations omitted). "The requirement of a 'genuine' issue of fact means the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992) (citation omitted). "An issue of fact is 'material' only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law." *Id.* (citation omitted).

## III.    Discussion.

Gail argues that her counterclaims for fraudulent misrepresentation, fraudulent nondisclosure, and breach of contract were dismissed in error and summary judgment was therefore improper. We first dispense with the breach-of-contract claim because error was not preserved on this issue. Gail argues that the Bank breached its contract by violating the obligation of good faith and fair dealing.

However, Gail did not advance an argument regarding good faith and fair dealing before the district court. Therefore, we will not consider it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before [the Court] will decide them on appeal."). To the extent Gail asserts a broader claim for breach of contract, we find it fails because Gail has not identified what term was allegedly breached or even what contract she is referencing.

Gail similarly fails to provide substantive argument on her claims for fraudulent misrepresentation and nondisclosure. She argues generally that depriving her of access to the family financial condition was a misrepresentation or nondisclosure. However, she does not offer any evidence to support her contention that the Bank deprived her of access. *See Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 88 (Iowa 2022) ("Summary judgment 'is not a dress rehearsal or practice run' for trial but rather 'the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events.'") (alteration in original) (citation omitted). Gail also points out that the failure to disclose material information can constitute fraud if the concealment is made by a party with a duty to communicate the concealed fact. Yet, she fails to explain why the Bank had any duty to disclose information to her. Gail references that there is a duty to disclose facts basic to a transaction but does not identify what transaction she entered into without such disclosure. Essentially, Gail has failed to provide us with the law and facts which are basic to her argument. We will not take sides and

engage in advocacy on her behalf. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) (observing that our appellate courts refuse "to assume a partisan role and undertake the appellant's research and advocacy"). Accordingly, we find Gail's counterclaims for fraudulent misrepresentation and nondisclosure must fail as well.

We find no error at law in the district court's dismissal of Gail's counterclaims for fraudulent misrepresentation, fraudulent nondisclosure, or breach of contract. With this result, we need not reach the Bank's cross-appeal regarding the reinstatement of its action against Shumate. We therefore affirm the district court's order regarding Gail's counterclaims and dismiss the Bank's cross-appeal.

**AFFIRMED ON APPEAL; APPEAL DISMISSED ON CROSS-APPEAL.**